IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| V. | § | No. 3:96-cr-294-K (02) |
| | § | |
| TRENT BREWER | § | |
| (BOP Register No. 24313-077), | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

The government has moved, pursuant to 18 U.S.C. §§ 3613(a) and 3664(n), for an order directing the Bureau of Prisons (the "BOP") to turn over to the Clerk of the Court all funds, except $200.00, in Defendant Trent Brewer's inmate trust account as payment toward the criminal monetary penalties imposed in this case. *See* Dkt. No. 190. Brewer has filed written responses and has moved for appointment of counsel and for a hearing. *See* Dkt. Nos. 191, 192, 193, 194, & 195. United States District Judge Ed Kinkeade has referred the government's motion, as well as Brewer's motions, to the undersigned United States magistrate judge for hearing, if necessary, and findings and recommendations. *See* Dkt. No. 196.

As ordered, the government has twice supplemented its motion to provide the Court with information concerning the outstanding monetary penalties owed by Brewer and also to provide the Court with additional information concerning his inmate trust account. *See* Dkt. Nos. 197, 200, 201, 202, 204, & 205.

And Brewer has had additional opportunities to present his views as to the

government's motion. *See* Dkt. Nos. 198, 199, 203, 206, & 209.

The undersigned now issues the following findings of fact, conclusions of law, and recommendation that the Court should grant the government's motion for a turnover order [Dkt. No. 190] and Brewer's motion to take judicial notice [Dkt. No. 203] and the Court should deny Brewer's motions requesting appointment of counsel [Dkt. Nos. 191 & 194] and his motion for a hearing [Dkt. No. 192].

## Applicable Background

Brewer currently is in custody following the revocation of his supervised release.

Both the original judgment, following Brewer's conviction for conspiracy to commit mail fraud and fraudulent use of a social security number, and the amended judgment, entered following revocation, include the requirement that Brewer make restitution in the amount of $5,000.00 and that such payments "shall begin while [he] is incarcerated, and the balance shall be payable through monthly installments of at least $150." Dkt. No. 149 at 4; Dkt. No. 189-2 at 3-4; *see also United States v. Poff*, No. CR09-0160JLR, 2016 WL 3079001, at *2 (W.D. Wash. June 1, 2016) ("An order of restitution is a lien in favor of the United States on all property and rights to property of the defendant" that "may be enforced by the United States in the same manner that United States recovers fines or 'by all other available and reasonable means.'" (respectively citing 18 U.S.C. § 3613(c), and quoting 18 U.S.C. § 3664(m)(1)(A)(i))).

While the original judgment on its face is silent as to interest on restitution, the amended judgment expressly provides in pertinent part that "[t]he defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is

paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f)." Dkt. No. 189-2 at 3.

On April 21, 2016, the government moved for an order directing the BOP to turn over to the Clerk of Court all funds, except $200.00, held in Brewer's inmate trust account, as payment toward the criminal monetary penalties imposed in this case, the outstanding balance of which was $6,885.37 as of April 11, 2016. *See* Dkt. No. 190 at 1. As of that date, Brewer's inmate trust account balance was approximately $4,150.00. *See id.* at 1-2. But, as of June 14, 2016, the account balance was $3,708.90. *See* Dkt. No. 205.

According to Brewer, the large balance in his trust account is due to an inheritance he received from his mother. *See* Dkt. No. 193 at 3; *see also* Dkt. No. 205-1 at 10 (reflecting a $4,000.00 deposit on March 11, 2016). He further refutes the balance of the criminal monetary penalties that he still owes, claiming that he has paid $2,150.00 in restitution while in the BOP's custody. *See, e.g.*, Dkt. No. 193 at 8 (inmate financial responsibility database printout reflecting payments of $2,150.00 toward the $5,000.00 restitution amount and an "oblg balance" of $2,850.00). Brewer asserts also that he was unaware that 5% annual interest applied to his outstanding balances and claims that he never received a judgment reflecting the interest rate. *See, e.g.*, Dkt. No. 195.

## Legal Standards and Analysis

<u>Interest on Restitution</u>

"Section 3612(f) requires a defendant to 'pay interest on any fine or restitution

-3-

of more than $2,500, unless the fine is paid in full before the fifteenth day of the date of the judgment,'" or unless "the Court determines that the defendant does not have the ability to pay such interest," in which case, "the Court may waive the interest requirement, limit the total interest payable to a specific dollar amount, or limit the length of the period during which interest accrues." *United States v. Williams*, Crim. No. 4:06-421-1, 2010 WL 1667852, at *1 (S.D. Tex. Apr. 23, 2010) (quoting 18 U.S.C. § 3612(f)(1); *citing id.* § 3612(f)(3)).

Therefore, it does not matter that Brewer's original criminal judgment did not explicitly state that interest was required. Nor should the Court excuse the obligation to pay interest on the restitution amount based on Brewer's professed ignorance of that requirement. *Cf. id.* at *2 ("[W]hen Williams was sentenced the Court made no determination at sentencing that Williams was unable to pay the interest, and he has made no showing now of any material change in his economic circumstances following the date of his sentence. Quite to the contrary, his motion does not at all rely on a change in his economic circumstances but rather a newly asserted religious objection to paying interest." (discussing a court's ability to adjust a payment schedule or fine under 18 U.S.C. § 3572(d)(3) "if the interests of justice so require when there is a material change in a defendant's economic circumstances that might affect the defendant's ability to pay the fine")).

Motion for a Turnover Order

Brewer's conviction for conspiracy to commit mail fraud and fraudulent use of a social security number is pertinent to his obligation to pay restitution, as

> [t]he [Mandatory Victims Restitution Act ("MVRA")] makes restitution mandatory for certain crimes, "including any offense committed by fraud or deceit," 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii), and authorizes the United States to enforce a restitution order in accordance with its civil enforcement powers. The MVRA broadly permits the United States, notwithstanding any other federal law, to enforce a restitution order "against all property or rights to property of the person fined." § 3613(a).

*United States v. DeCay*, 620 F.3d 534, 539 (5th Cir. 2010) (footnote omitted); *see also*

*United States v. Ekong*, 518 F.3d 285, 286 (5th Cir. 2007) (per curiam) ("The attorney general is required by the MVRA to enforce victim restitution orders 'aggressively.'"

(quoting *United States v. Phillips*, 303 F.3d 548, 551 (5th Cir. 2002))); *cf. United States v. Foreman-Pottinger*, Crim. No. 09-023, 2009 WL 3347116, at *3 (E.D La. Oct. 14, 2009) ("While the existence of a current payment schedule does not bar the Government from aggressively using writ of garnishment and other means of collection, the MVRA requires the Government to show that a 'material change in the defendant's economic circumstances' has occurred before the Court may amend a restitution order's preexisting payment schedule." (citing 18 U.S.C. § 3664(k))).

Although Brewer has made payments toward his restitution obligation as ordered by the Court, his inheritance amounts to "receipt of a windfall during imprisonment[, which] triggers an automatic payment requirement:

> If a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed.

*United States v. Roush*, 452 F. Supp. 2d 676, 679 (N.D. Tex. 2006) (quoting 18 U.S.C. § 3664(n)).

"This language explicitly demonstrates that any amount a defendant receives during a time of imprisonment can be levied by the United States to reduce that defendant's debt to the government." *United States v. Cooper*, No. 02-40069-SAC, 2006 WL 3512936, at *3 (D. Kan. Nov. 1, 2006) (collecting authority reflecting that "[o]ther courts have taken the same approach"); *see United States v. Scales*, 639 F. App'x 233, 239 (5th Cir. 2016) (per curiam) ("The MVRA explicitly provides that if an individual becomes entitled to 'substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration,' the court may require that those amounts be used to pay restitution." (quoting Section 3664(n))); *United States v. Villongco*, Crim. Case No. 07-009 (BAH), 2016 WL 3747508, at *5 (D.D.C. July 11, 2016) ("The MVRA further requires a defendant, who enjoys improved economic circumstances post-sentencing and 'during a period of incarceration,' to apply to the restitution obligation the value of 'substantial resources' received 'from any source, including inheritance, settlement, or other judgment.'" (quoting Section 3664(n))).[1]

Under Sections 3613 and 3664, "'courts have found it appropriate to order the turnover of funds in inmate trust accounts to be applied to restitution.'" *Poff*, 2016 WL

---

[1] *See, e.g.*, *United States v. Gardner*, 434 F. App'x 250, 253 (4th Cir. 2011) (per curiam) (affirming the district court's decision directing that, under Section 3664(n), a defendant's $91,000.00 personal injury settlement be applied to the restitution due, and rejecting defendant's argument "that the court failed to consider her financial resources, projected earnings and other financial obligations," as those "are factors to be considered when establishing the restitution payment schedule"); *cf. United States v. Key*, No. 3:12-cv-3026-L, 2013 WL 2322470, at *2 (N.D. Tex. May 28, 2013) ("The government may also enforce a restitution order pursuant to section 3664(n). Only a handful of district courts in the Fifth Circuit have discussed or applied section 3664(n)." (discussing *Roush*)).

3079001, at *2 (quoting *United States v. Hester*, No. 10cr2967 BTM, 2016 WL 1007335, at *2 (S.D. Cal. Mar. 14, 2016) (collecting cases)); *see id.* at *2 n.2 (noting that there are "narrow exemptions available to criminal restitution debtors enumerated in 18 U.S.C. § 3613(a)" that "do not apply to funds contained in [an] inmate trust account"); *United States v. Khazraeinazmpour*, Cr. No. 14-07(1) (DWF/JSM), 2015 WL 5311650, at *1 (D. Minn. Sept. 11, 2015) (As to application of the MVRA, "[t]here are no exemptions that apply to [a d]efendant's Inmate Trust Account." (citing 18 U.S.C. § 3613(a)(1))); *see also* Dkt. No. 190 (mot. for a turnover order) at 3-4 (noting same).

Brewer argues that, "[s]ince being incarcerated[, he] has entered into the [BOP] Inmate Financial Responsibility Program ([the] IFRP) and has not missed a payment," and he asserts "that once [an inmate] enters into the IFRP and timely makes his payments to [the BOP] as agreed, until [the inmate] defaults on the IFRP agreement[,] the Court lacks jurisdiction to issue a collection order under 18 U.S.C. § 3613(a)." Dkt. No. 203 at 2 (citing *United States v. Pacheco-Alvarado*, 782 F.3d 213 (5th Cir. 2015)).

But, as another judge of this Court has cautioned, "[c]ourt-imposed payment schedules under the MVRA are not to be confused with payment plans designed by the BOP under the [IFRP]." *Guzman v. Chandler*, No. 4:13-cv-303-Y, 2013 WL 4561430, at *3 n.1 (N.D. Tex. Aug. 28, 2013).

Indeed, in *Pacheco-Alvarado*, the United States Court of Appeals for the Fifth Circuit held that a "district court has the authority to impose a fine and provide for a payment schedule" and further noted that, "[a]lthough the BOP is responsible for

collection of unpaid fines, IFRP regulations expressly countenance deviations from 'ordinary' processes when called for to meet an inmate's specific obligations." 782 F.3d at 219; *see also id.* at 217-18 (discussing a district court's authority to set a schedule for payment of criminal fines and penalties: "'A person sentenced to pay a fine or other monetary penalty, *including restitution*, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments. If the court provides for payment in installments, the installments shall be in equal monthly payments over the period provided by the court, unless the court establishes another schedule.'" (quoting 18 U.S.C. § 3572(d)(1)); emphasis added); *cf. United States v. Lizarraga*, No. CR 05-0899-PHX-FJM, 2012 WL 5995693, at *2 (D. Ariz. Nov. 30, 2012) ("The fact that Defendant is participating in the Inmate Financial Responsibility Program, and is, through that program, making payments toward his restitution, is not a basis to object to, or defeat this garnishment action." (relying in part on Section 3664(n)).

Therefore, given the clear language in Section 3664(n), which expressly applies to the $4,000.00 inheritance that Brewer received while incarcerated, and because Brewer has offered no valid reason why the request for a turnover order should be denied, the Court should grant the government's motion and issue an order directing the BOP to turn over to the Clerk of the Court all funds, except $200.00, in Brewer's inmate trust account as payment toward the criminal monetary penalties imposed in this case.

In finding that the government's requested "carve out" of $200.00 is appropriate,

the undersigned has examined the verified inmate trust account data submitted by the government at the Court's request, *see* Dkt. No. 205 (documenting account activity from August 30, 2015 through June 14, 2016), and has considered Brewer's reply to this supplementation, in which he has included declarations from the mothers of his children attesting to Brewer's involvement with and support of his children, *see* Dkt. No. 209. While Brewer's continuing to financially support his children as he is able while incarcerated is admirable, the Court should not ignore the clear language of Section 3664(n) and its application here. Nor should the Court ignore that the balance of Brewer's inmate trust account as of June 14, 2016 was below the $4,000.00 "windfall during imprisonment" that he received earlier in 2016, which windfall's deposit into his inmate trust account triggered the "automatic payment requirement" in Section 3664(n). *Roush*, 452 F. Supp. 2d at 679; *see Hester*, 2016 WL 1007335, at *3; *Khazraeinazmpour*, 2015 WL 5311650, at *1 (considering support for similar "carve outs").

<u>Brewer's motions</u>

Brewer filed four motions after the government moved for a turnover order.

To the extent that the undersigned has considered the positions asserted in Brewer's motion to take judicial notice [Dkt. No. 203], the Court should grant that motion.

But the Court should deny his requests for appointment of counsel [Dkt. Nos. 191 & 204], because "[n]o constitutional right to counsel exists in federal postconviction proceedings," *Urias v. Thaler*, 455 F. App'x 522, 523 (5th Cir. 2011) (per curiam) (citing

*Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)), and Brewer had not shown that "the interests of justice" require the appointment of counsel under 18 U.S.C. § 3006A(a)(2)(B) as to the issues before the Court, *cf. United States v. Davis*, 400 F. App'x 538, 540 (11th Cir. 2010) (per curiam) ("Although a defendant is entitled to counsel during direct appeal, [Davis] does not have a Sixth-Amendment right to counsel during collateral attacks on his sentence. More specifically, the Sixth Amendment does not guarantee a right to counsel at a hearing in which a defendant requests the court's leniency in modifying a validly imposed restitution order. Because Davis had already exhausted his direct appeal, his corresponding Sixth Amendment right to counsel has already been extinguished." (citations omitted)).

The Court also should deny Brewer's requests for a hearing, *see* Dkt. No. 192, as a hearing is unnecessary to decide the issues before the Court.

### Recommendation

The Court should grant the government's Motion for Turnover Order [Dkt. No. 190] and Brewer's motion to take judicial notice [Dkt. No. 203] and deny Brewer's motions for appointment of counsel [Dkt. Nos. 191 & 194] and for a hearing [Dkt. No. 192].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 21, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE